# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### ABERDEEN DIVISION

TIMMY DALE WHITAKER,                                    **PETITIONER**

**V.**                                    **CIVIL ACTION NO.: 1:13CV242-GHD-JMV**

STATE OF MISSISSIPPI,                                    **RESPONDENT**

## MEMORANDUM OPINION AND ORDER

Petitioner, Timmy Dale Whitaker, inmate no. 48914 currently confined at the Mississippi

State Penitentiary, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. §

2254, in which he seeks to challenge his State court convictions and sentences for the crimes of

burglary of a dwelling and aggravated assault. Respondent has filed an answer to the petition,

and Whitaker has filed a reply thereto. Having considered the parties' filings and the applicable

law, the Court finds that federal habeas relief is not warranted, and that this action should be

dismissed.

### History

The purposes of providing a background into Whitaker's convictions, the Court recites

the facts of his State court case as set forth by the Mississippi Court of Appeals:

> On August 5, 2008, Whitaker, Samuel Patterson Jr., and William Danny Whitaker
> (Danny), went to William Clark's home in search of money to purchase drugs.
> Danny told Whitaker that he and Darlene Bush, Clark's granddaughter, had gotten
> money from Clark on a previous occasion. Danny said that if Clark would not
> give them money again, they would take it.
>
> Whitaker drove Patterson and Danny to Clark's home. They stopped to pick up a
> crowbar and a pipe from Patterson's workplace. Whitaker then dropped Danny
> and Patterson off at Clark's trailer, where they broke in, severely beat Clark, and
> took his wallet containing several hundred dollars. The two took Clark's telephone
> so that he would be unable to call for help. Whitaker returned to pick up Danny

and Patterson approximately twenty minutes after he had dropped them off. Clark's daughter found Clark the next morning lying in bed, severely beaten. Clark was transported to Magnolia Hospital and then transferred to the Regional Medical Center in Memphis, Tennessee. Clark was released from the hospital but later died on November 8, 2008.

On November 4, 2008, during the police investigation, Detective Jerry Rogers picked up Whitaker to question him about the crime. Whitaker was Mirandized, but he did not give a statement. The next day, while Whitaker was in the hospital and taking morphine and lortab to control his pain, he requested to speak to Detective Rogers. Detective Rogers and another investigator went to the hospital. There, Detective Rogers verbally Mirandized Whitaker, who then proceeded to give a statement about his involvement in the crime. Though he confessed, Whitaker refused to sign the statement.

Whitaker was indicted on January 21, 2009, and arraigned on March 25, 2009. The matter continued upon Whitaker's request and was set for trial in the August term. On June 22, 2009, Whitaker filed for a continuance, which was granted. On September 16, 2010, the prosecution filed for a continuance due to the unavailability of a witness who was suffering from health problems. The circuit court granted the prosecution's request and a trial date was set for November 8, 2010. Whitaker was convicted on November 9, 2010.

At a pretrial hearing, Whitaker made a motion to suppress the statement he gave while in the hospital. The circuit court denied the motion, noting that though the statement was not adopted as Whitaker's own, it was still a record of the conversation, and those present who heard about the statements could testify about what they heard.

At trial, Danny testified that when Whitaker served as the getaway driver, he knew that the purpose of the trip to was to break into the house and rob Clark by force. Further, Detective Rogers testified that he advised Whitaker of his *Miranda* rights and that Whitaker did not appear to be under the influence of any drug or narcotic at the time he gave his statement.

*Whitaker*, 114 So. 3d 725, 728 (Miss. Ct. App. 2012).

Whitaker was subsequently convicted of aggravated assault (Count I) and burglary of a

dwelling (Count II) in the Circuit Court of Alcorn County, Mississippi, on November 10, 2011.

He was sentenced as an habitual offender to serve a term of twenty-five years on Count I and a

term of twenty years on Count II, with the sentences to be consecutively served in the custody of

the Mississippi Department of Corrections. He appealed his convictions and sentences to the

Mississippi Supreme Court, raising the following issues:

> A. The trial court erred in not granting a mistrial following prejudicial comments
> made by prospective jurors during voir dire.

> B. Whitaker's constitutional and statutory right to a speedy trial was violated.

> C. The trial court erred in failing to suppress the statement Whitaker made to
> Investigator Rogers while in the hospital. Whitaker was under the influence of
> narcotics and could not give a knowing and intelligent waiver of his *Miranda*
> rights.

> D. The trial court erred in not granting Whitaker's motion for J.N.O.V. or in the
> alternative a new trial, as the verdicts are against the overwhelming weight of the
> evidence.

The Mississippi Court of Appeals affirmed the judgment of the circuit court on August 7,

2012. *Whitaker v. State*, 114 So. 3d 725 (Miss. Ct. App. 2012), *reh'g denied*, March 19, 2013,

*cert. denied*, June 6, 2013 (Cause No. 2011-KA-00857-COA). Whitaker did not file for leave to

seek post-conviction relief following the denial of his appeal. Rather, he filed a federal habeas

petition in this Court on June 24, 2013, which was docketed in Cause No. 1:13cv123-MPM-SAA

(N.D. Miss). On October 3, 2013, the Court granted Respondent's motion to dismiss the petition

for Whitaker's failure to exhaust his available State court remedies and dismissed the petition

without prejudice.

Thereafter, Whitaker sought permission from the Mississippi Supreme Court to seek

post-conviction collateral relief in the trial court, raising the following grounds for relief *pro se*

(as stated by Whitaker):

Ground One. The trial court erred in not granting a mistrial following prejudicial

comments made during voir dire.

Ground Two. Whitaker constitutional and statutory right to a speedy trial was
violated by a two-year delay.

Ground Three. The trial court erred in failing to suppress the alleged statement
Whitaker made to Investigator Rogers.

Ground Four. Prosecution or agency of the State (withheld) exculpatory evidence
in the discovery.

Ground Five. Prosecution for the State nondisclosure of plea agreement made to
its key witness William Danny Whitaker and did nothing to correct false
testimony of witness, denied Whitaker due process of law in violation of the
Fourteenth Amendment.

Ground Six. The trial court failed to submit any of the jury instructions tendered
by the defense and specifically raises issues concerning instructions tendered by
the Defendant.

Ground Seven. The trial court erred in not granting Whitaker's motion for
J.N.O.V. or in the alternative a new trial as the verdicts are against the
overwhelming weight of evidence.

The Mississippi Supreme Court denied Whitaker's request, holding that Whitaker "raised all of

these claims on direct appeal and/or in his petitions for certiorari review, and the claims were

found to be without merit. Therefore, the claims are now barred by the doctrine of res judicata

and the petition should be denied." (Answer, Ex. B).

On or about December 19, 2013, Whitaker, proceeding *pro se*, filed the instant federal

habeas petition, raising the following grounds for relief:

Ground One. The trial court erred in not granting a mistrial following prejudicial
comments made during voir dire.

Ground Two. (Whitaker['s]) constitutional and statutory right to a speed[y] trial
was violated by a two-year delay.

Ground Three. The trial court erred in failing to suppress the alleged statement

(Whitaker) made to Investigator Rogers.

Ground Four. Prosecution or an agency of the State (withheld) exculpatory evidence in the discovery.

Ground Five. Prosecution for the State nondisclos[ure] of plea agreement made to its key witness (William Danny Whitaker) and did nothing to correct false testimony of witness (denied) (Whitaker) due process of law in violation of the Fourteenth Amend[ment].

Ground Six. The trial court failed to submit any of the jury instructions tendered by the defense and specifically raises issues concerning instructions tendered by defendant.

Ground Seven. The trial court erred in not granting Whitaker's motion for J.N.O.V. or in the alternative, a new trial, as the verdicts are against the overwhelming weight of evidence.

## Legal Standard

The Court's review of Petitioner's claims is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA prohibits the grant of federal habeas relief on any claim adjudicated on the merits in state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the presented evidence. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

A state court's decision is "contrary to" Supreme Court law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The "unreasonable application" clause is reserved for

5

decisions that either fail to identify the correct governing law, or that identify the correct

governing law but misapply it to the case. *Id.* at 407-08. Under this standard, a state court's

decision will not warrant federal habeas relief unless its application of federal law is both

"incorrect *and* unreasonable[.]" *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004) (emphasis

in original) (citation omitted). A federal habeas court considers only the state court's conclusion

when determining whether there has been an unreasonable application of federal law, and not the

court's reasoning in reaching the decision. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

## Discussion

### I.   The trial court erred in failing to grant a mistrial following "prejudicial" comments made during voir dire.

Whitaker complains that veniremen Smotherman, Marlar, and Hall made prejudicial

comments during voir dire, and that the trial court erred in failing to grant a mistrial, as the

comments tainted the venire.

During the trial court's voir dire, potential juror Robert Smotherman stated, "I have jailed

him [Whitaker] and have been sued by him, the defendant." (SCR vol. 3, 109)[1]. Smotherman

stated that he would not be able to be a fair and impartial juror. (*Id.*). Venire member Marlar

stated that she was "a former correctional officer with the Alcorn County Sheriff's Department

and lifelong family growing up, associate of the entire Whitaker family." (*Id.* at 110). She stated

that she was not sure whether she would be able to be fair and impartial. (*Id.*).

Venire member Hall stated that he was "familiar with everybody in the courtroom and

---

[1] Throughout this Memorandum Opinion and Order, the Court uses "SCR vol. __, ___"
to designate references to a particular page within the five consecutively-numbered volumes of
State court records and trial transcripts.

6

very familiar with Mr. Whitaker." (*Id.* at 109). Later, Hall stated "I might add that I was probably the jail administrator and seems like to me that [Whitaker] just briefly passed through the jail, as he had been violated or something on these new charges." (*Id.* at 117). Hall also stated that from "working in prison and probation and parole I know the whole [Whitaker] family." (*Id.* at 137).

During voir dire, the trial judge instructed the venire that Whitaker was to be presumed innocent. (*Id.* at 113). He further instructed the jury:

Do you understand that Mr. Whitaker enjoys the presumption of innocence I was talking about a moment ago and that that presumption of innocence goes through the course of this trial and prevails at the end unless the State of Mississippi has developed testimony which satisfies the mind of each and every juror beyond a reasonable doubt that he did, in fact, do what he is charged with having done, and only then are you permitted to return verdicts of guilty against him? Do each of you understand that?

(*Id.* at 114). There was no response to these questions. (*Id.*). At the close of voir dire, the trial judge further asked the panel whether, having listened to the responses given by others, "there [is] anything about any of those responses that cause you to know something you didn't know, I suppose, or anything that would have any bearing on your ability to fairly and impartially sit as a juror in the trial of this case?" (SCR vol. 4, 160). There was no response. (*Id.*). The trial judge instructed the venire that nothing heard in voir dire was evidence. (*Id.* at 161).

Following voir dire, the trial court excused venire members Marlar, Hall, and Smotherman for cause. (*Id.* at 164). Defense counsel moved for a mistrial and asked that the entire venire be stricken. (*Id.*). The trial judge denied the motion, noting:

Mr. Nails, on balance, the motion is no doubt prompted by your view that this jury panel is concealing information from me and you. I am convinced beyond any doubt that the remaining jury venire panel understands precisely what the issues

7

are here and that they have each of them, because of the questions that we have all asked of them, qualified to try this case.

The comments of Mr. Hall, while extraneous, I do not believe at all would ever under any circumstances overcome the failure of the State to prove their case and result in the conviction of your client. If I thought that for one heartbeat, I'd declare a mistrial right this instant.

*(Id.* at 166-67).

On direct appeal, the Mississippi Court of Appeals considered this claim and held:

There is a presumption in Mississippi that juries have followed the instructions of the trial judge. *Young v. State*, 831 So.2d 585, 589 (¶ 11) (Miss.Ct.App.2002) (citing *Ragin v. State*, 724 So.2d 901, 904 (¶ 13) (Miss.1998)). To that end, the Mississippi Supreme Court has also held that when follow-up questions reveal there is nothing to indicate that a venire panel is biased, prejudiced, or would be less than fair in discharging its duty, it is proper for a trial judge to refuse to disqualify the entire jury panel. *Benson v. State*, 551 So.2d 188, 191 (Miss.1989). Further, the decision to declare a mistrial is within the sound discretion of the trial judge. *Evans v. State*, 725 So.2d 613, 649 (¶ 114) (Miss.1997) (quoting *Brent v. State*, 632 So.2d 936, 941 (Miss.1994)).

"While a comment by a single prospective juror during voir dire may taint the entire panel, where there is no evidence of such a taint, the court may correctly refuse to disqualify the entire panel from service if the jury affirms that it can render a verdict based solely on the evidence brought before the court." *Young*, 831 So.2d at 589 (¶ 11) (citing *Holland v. State*, 705 So.2d 307, 339–40 (¶¶ 119–23) (Miss.1997)). This presumption also applies when multiple jurors make improper comments. *Hopson v. State*, 625 So.2d 395, 402–03 (Miss.1993).

Based on the presumption that juries follow the instruction of the trial judge, and the fact that the circuit judge repeatedly asked the jurors whether they could be fair and impartial in rendering a verdict at trial, it is clear that the judge did not abuse his discretion by allowing the jury to continue to trial. As in *Young*, there was no evidence in this case that the jury was tainted. Therefore, the circuit judge was within his discretion when he refused to grant a mistrial and disqualify the entire panel where they affirmed they could render a verdict based solely on the evidence brought before the court. This issue has no merit.

*Whitaker*, 114 So. 3d at 729-30.

The United States Supreme Court has held that "[d]ue process means a jury capable and

willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Here, the jurors who made the challenged comments were excused for cause, and the venire was questioned thoroughly regarding their impartiality. They were specifically questioned about the comments of their fellow jurors and did not indicate that any such comments would affect their ability to be fair and impartial. There is nothing in the record to indicate that the potential jurors were tainted by the comments made during voir dire, or that Whitaker was tried by a partial jury. As such, the decision rejecting this claim is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law. Additionally, the decision is not based on an unreasonable determination of facts in light of the evidence. Therefore, Whitaker is not entitled to relief on this claim.

## II.    Constitutional and statutory right to a speedy trial.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend. VI.[2] Allegations of constitutional speedy trial violations are governed by the test laid out in *Barker v. Wingo*, 407 U.S. 514 (1972), where the Supreme Court announced four factors to be weighed in reaching a speedy trial determination: (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of the speedy trial right; and (4) prejudice to the accused. *Id*. at 530.

In order to trigger a full *Barker* analysis, an accused must allege a "presumptively prejudicial" delay between the time of accusation and trial. *Id.* at 530-31. Courts, including the

---

[2] This guarantee is applicable to the states through the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213 (1967).

Fifth Circuit, have held a one-year delay to be sufficient to trigger a full *Barker* analysis. *See,*

*e.g., Nelson v. Hargett*, 989 F.2d 847, 851 (5th Cir. 1993); *see also Doggett v. United States*, 505

U.S. 647, 652 n.1 (1992). The Mississippi Supreme Court has generally deemed a delay of eight

months or longer as "presumptively prejudicial." *State v. Woodall*, 801 So. 2d 678, 682 (Miss.

2001) (citing *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989)). Whitaker, who was indicted in

January 2009, was arrested on November 4, 2008. (*See* Trial Tr. vol. 4, 247). Whitaker's speedy

trial clock began running on November 4, 2008, when he was arrested. *See Robinson v. Whitley*,

2 F.3d 562, 568 (5th Cir. 1992) ("The relevant period of delay is that following accusation, either

arrest or indictment, whichever occurs first.") (citing *Dillingham v. United States*, 423 U.S. 64

(1975)). Whitaker's trial began on November 9, 2010. Approximately 735 days elapsed

between the time Whitaker was arrested until his trial. As the appellate court noted, "this delay

triggers the presumption of prejudice" and requires the Court to balance the remaining *Barker*

factors. *Whitaker*, 114 So. 3d at 731.

The second *Barker* inquiry is the reason for the delay and whether the delay is attributable

to the actions of the State or the defendant. The Fifth Circuit has held:

> The weight assigned to a state's reasons for post-accusation delay depends on the
> reasons proffered. At one extreme, a deliberate delay to disadvantage the defense
> is weighted heavily against the state. At the other end of the spectrum, delays
> explained by valid reasons or attributable to the conduct of the defendant weigh in
> favor of the state. *See Cowart v. Hargett*. Between these extremes fall
> unexplained or negligent delays, which weigh against the state, "but not heavily."

*Goodrum v. Quarterman*, 547 F.3d 249, 258 (5th Cir. 2008). The defendant must show "that the

State delayed the prosecution in order to gain an 'impermissible advantage at trial'" in order for

this factor to weigh heavily against the state. *Id.* at 259 (citing *Doggett v. United States*, 505 U.S.

647, 655 (1992)).

Whitaker's arraignment order, dated March 25, 2009, states that he was to meet with his attorney on July 9, 2009, to discuss the possibility of a guilty plea. (SCR vol. 1, 14). The arraignment order further stated that "the cause is continued on the motion of the Defendant and set for trial during the next regularly scheduled term on a date to be set by the Court prior to that term by separate order." (*Id.*). Whitaker filed a *pro se* motion for a continuance signed on June 22, 2009, seeking a continuance due to injuries he suffered in an October 2008 car wreck. (*Id.* at 33-38). On August 11, 2009, the case was continued until the next term of court. (*Id.* at 46). On September 10, 2010, the trial court granted the State's motion for continuance, finding that a material witness was unavailable due to "recent health problems." (SCR vol. 2, 50). On November 8, 2010, a motion hearing was held, and, on November 9, 2010, Whitaker's trial began. (SCR vol. 3, 2 and 95).

On direct appeal, the Mississippi Court of Appeals held:

> The continuances requested by Whitaker caused a 216-day delay. The State, on the other hand, requested one continuance because of a witness's unavailability due to illness, only causing a 54-day delay. The State's reason for the delay was clearly legitimate and did not maliciously deprive Whitaker of his right to a speedy trial.

*Whitaker*, 114 So. 3d at 731. Here, the total delay was largely attributable to Whitaker himself and was not an attempt by the State to gain an impermissible advantage at trial. *See Doggett*, 505 U.S. at 656 (holding that this factor does not weigh heavily against the state unless the defendant shows that the delay was caused by the prosecution in order to gain an "impermissible advantage at trial").

The third *Barker* consideration is whether the defendant effectively asserted his right to a

11

speedy trial. Whitaker first mentioned his right to a speedy trial *pro se* in court on the morning of trial, when he asked that his charges be dismissed under *Barker*. (SCR vol. 3, 105). This factor has been counted against a defendant who fails to diligently assert his right to a speedy trial. *See United States v. Parker*, 505 F.3d 323, 330 (5th Cir. 2007) (finding fourteen month delay in asserting right dilatory); *see also United States v. Frye*, 372 F.3d 729, 739 (5th Cir. 2004) (noting that lapse of one year between indictment and formal request for speedy trial "cuts against presuming prejudice").

The appellate court considered this issue and held:

> Moreover, Whitaker did not assert his constitutional right to have a speedy trial. In fact, based on his requests for continuances, Whitaker appears to have wanted the proceedings to be delayed, rather than expedited. To that end, the only time Whitaker brought up the length-of-time issue was at a pretrial hearing the day before trial, long after his continuance was granted. It appears that rather than wanting to have his constitutional right to a speedy trial invoked during the trial, Whitaker simply wanted to argue a procedural defect after the fact in order to get the charges dismissed or a new trial.

*Whitaker*, 114 So. 3d at 731.[3] Because Whitaker never demanded a speedy trial, but instead simply requested a dismissal on his charges on the day of trial, this factor weighs against him.

Finally, the Court considers the actual prejudice Whitaker suffered as a result of the delay.[4] "'Actual prejudice' is assessed in light of the three following interests of the defendant: (1) 'to prevent oppressive pretrial incarceration'; (2) 'to minimize anxiety and concern of the

---

[3] The opinion states that Whitaker made his motion at the pretrial hearing. The state court record reveals that he actually made his comments shortly before voir dire began. (SCR vol. 3, 105).

[4] Courts will afford a delay a presumption of prejudice only where the first three factors weigh heavily in the defendant's favor and delay is at least five years. *See, e.g., Goodrum*, 547 F.3d at 260-61.

accused'; and (3) 'to limit the possibility that the defense will be impaired.'" *Amos v. Thorton*, 646 F.3d 199, 208 (5th Cir. 2011) (citation omitted). The last of these is "the most serious," as "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532. As the appellate court held, "the delays have not caused any prejudice to Whitaker, nor does he argue they have." *Whitaker*, 114 So. 3d at 731.

Upon a balance of all of the *Barker* factors in this case, the Court finds that the decision rejecting Whitaker's speedy trial claim is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law. Additionally, the decision was not based on an unreasonable determination of facts in light of the evidence presented. Federal habeas relief is not warranted with regard to this claim.[5]

**III. The trial court erred in failing to suppress Whitaker's statement.**

Whitaker claims that his statement to law enforcement officers should have been suppressed. "A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 920 (5th Cir. 1999) (citing *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994)). A federal habeas court's role in reviewing state court evidentiary rulings "'is limited to determining whether a trial judge's error is so extreme that it constituted a denial of

---

[5] Whitaker also alleges that his statutory right to a speedy trial was violated, as Mississippi law generally requires that an incited defendant be brought to trial within 270 days after arraignment. *See* Miss. Code Ann. § 99-17-1. Whitaker's allegation that his statutory right to a speedy trial was violated does not raise a viable claim on federal habeas review. *Bronstein v. Wainwright*, 646 F.2d 1048, 1050 (5th Cir. 1981) (holding that a state's interpretation of its own laws or rules is not basis for federal habeas relief absent a constitutional issue). The Court otherwise notes that Whitaker's statutory claim was raised and rejected by the appellate court. *Whitaker*, 114 So. 3d at 730. Whitaker has not demonstrated an error in the State courts' analysis of their statutory law.

fundamental fairness' under the Due Process Clause." *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998) (citations omitted). The "erroneous admission of prejudicial testimony does not justify habeas relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination." *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999).

Prior to trial, a hearing was held on Whitaker's motion to suppress his statement. At the hearing, Investigator Jerry Rogers testified that he spoke to Whitaker on November 4, 2008, and, that after being Mirandized[6], Whitaker denied having any knowledge of the burglary and aggravated assault. (SCR vol. 3, 7-9). Rogers stated that on November 5, 2008, he received a phone call from the jail administrator informing Rogers that Whitaker had been taken to the emergency room and wished to speak with Rogers.[7] *(Id.* at 9). Investigator Rogers, along with Investigator Reggie Anderson, went to the hospital to speak with Whitaker. *(Id.).* Upon their arrival at the hospital, Whitaker was again Mirandized. *(Id.* at 10, 29, and 56). According to Rogers, Whitaker stated that he wanted to avoid being returned to prison for a parole revocation and was willing to give the investigators a statement, if they would drop the charges. *(Id.* at 13 and 57). Investigator Rogers testified that he made clear to Whitaker that the charges would not be dropped. *(Id.* at 13, 29, and 60). Whitaker purportedly told Investigator Rogers that "he just drove the van, that him and Danny had decided before they left that they wanted to go get some money, that they knew an old man that they could go get some money. But they went by and picked up Sam Patterson first. Timmy Dale said they got there and he put out [Danny] and

---

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[7] Jail administrator, Jeff Mills, testified that Whitaker, who had been in a car accident prior to his arrest, was taken to the hospital after he fell in his jail cell. (SCR vol. 3, 26).

14

Sam." (*Id.* at 17). Rogers testified that Whitaker recounted that he drove down the road and came back later to pick up Sam and Danny. (*Id.*). Rogers stated that he reduced Whitaker's statement to writing, but that Whitaker refused to sign the statement because Rogers would not promise to drop the charges. (*Id.* at 16, 29, and 59). Both Jeff Mills and Investigator Anderson testified that they witnessed Whitaker give the oral statement and refuse to sign the statement written out by Rogers. (*Id.* at 29 and 59). All three officers testified that, at the time he provided the statement, Whitaker did not appear to be intoxicated or under the influence of any medication. (*Id.* at 18, 31, and 56).

Whitaker testified at the suppression hearing that, at the time he provided the statement, he had taken morphine and lortab. (*Id.* at 38). The defense introduced hospital discharge papers reflecting that Whitaker had been given morphine on November 5, 2008, but they did not establish when the injections were given (*Id.* at 41). Jeff Mills testified that Whitaker had been given a shot prior to leaving the hospital in order to combat any pain he might suffer during transport. (*Id.* at 33). Whitaker claimed that a nurse had interrupted the police officers in order to administer some medications. (*Id.* at 38). However, when asked by the judge, Investigator Anderson testified that he did not recall being asked to leave the room so that medical personnel could administer medication during the statement. (*Id.* at 62-63). Further, Whitaker testified, "I'm not denying taking my brother and, uh, uh, Sam Patterson out there with the intentions to borrow some money. It wasn't nothing about no robbery. If I had knew what they was going to do, sir, we would not be there." (*Id.* at 46). As such, Whitaker admitted to driving his brother and Patterson to the home where the robbery took place but denied acknowledging that he knew that they intended to rob the man.

15

Following the testimony, the trial judge held:

> The Court finds that the defendant in this cause was properly advised of his
> Miranda Rights prior to any questions for discussion concerning the home
> invasion charge, as indicated in the November 5, 2008, statement attributed to
> him. The Court is further of the opinion and finds that the defendant was not
> induced by promises or threats and that he did, in fact, knowingly,
> understandingly, freely and voluntarily make statements to the investigating
> officers on November 5, 2008.
>
> The testimony of the three law enforcement officers present with him in the
> courtroom is consistent in describing his circumstances being fully in control of
> his mental faculties, discussing with them the circumstances. While on the other
> hand, the defendant's memory seems to be terribly selective, he asserts that he is
> incapable of recalling what was in there, but he does remember that he looked at
> it, didn't like it, and told them he wasn't going to sign it and so forth. Talked
> about guns in a home invasion.
>
> I don't have any question at all that Mr. Whitaker received morphine. I am of the
> opinion that that is related to the incident Officer Mills testified about when they
> were bundling him up for transportation. They medicated so that he would make
> the trip without any or as little discomfort as possible.
>
> The motion to suppress the statement or statements made during the interview of
> November 5, 2008, is denied.

(*Id.* at 70-72).

On direct appeal, the Mississippi Court of Appeals held:

> In this case, the circuit judge conducted a hearing on the admissibility of
> Whitaker's confession. Testimony established that Whitaker was the one who
> initiated the conversation the day he confessed. Moreover, Detective Rogers gave
> Whitaker a verbal *Miranda* warning in front of others, which Whitaker stated he
> understood. Whitaker did not appear to be intoxicated, nor has he asserted that his
> intoxication was to the extent of mania. Therefore, the circuit judge properly
> admitted the confession and allowed the jury to weigh its credibility. This issue
> has no merit.

*Whitaker*, 114 So. 3d at 732.

Upon a review of the record in this cause, the trial court's decision to admit evidence of

Whitaker's statement to law enforcement was not an error rendering his trial fundamentally unfair. The Court finds that the decision rejecting this claim was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law. Additionally, the decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Whitaker is not entitled to federal habeas relief as to this claim.

## IV.    The prosecution withheld potentially exculpatory evidence.

Whitaker alleges that, at his suppression hearing, the prosecution stated that they were unaware of the hospital discharge papers introduced by defense counsel, even though the hospital bill was sent to the Alcorn County Sheriff's Department and lists the medications Whitaker was given during his emergency room visit. The bill is attached to his federal habeas petition. (ECF No. 1, 248).

The Court construes Whitaker's allegation as a claim that the prosecution withheld the hopsital bill. The prosecution must disclose exculpatory evidence in its possession that is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  The Fifth Circuit has held:

> To establish a *Brady* claim, a habeas petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the petitioner, and (3) the evidence was material. *U.S. v. Ellender*, 947 F.2d 748, 756 (5th Cir.1991) (citations omitted). In assessing the materiality of suppressed evidence, the Supreme Court explained that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *U.S. v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*, at 682, 105 S.Ct. at 3383. Recently, the Court further observed that a "reasonable probability" of a different result is shown when the non-disclosure "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the jury verdict." *Kyles v. Whitley*, 514 U.S. 419, ----, 115 S.Ct. 1555, 1566, 131

L.Ed.2d 490 (1995) (footnote omitted). "[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Id.* at ----, 115 S.Ct. at 1566. Finally, the materiality inquiry is applied to "the suppressed evidence collectively, not item-by-item." *Id.* at ----, 115 S.Ct. at 1567.

> Fifth Circuit decisions have expanded upon these statements, holding that "[t]he materiality of *Brady* evidence depends almost entirely on the value of the evidence relative to the other evidence mustered by the State." *Smith v. Black*, 904 F.2d 950, 967 (5th Cir.1990), judgment vacated on other grounds, 503 U.S. 930, 112 S.Ct. 1463, 117 L.Ed.2d 609 (1992).

*Spence v. Johnson*, 80 F.3d 989, 994-95 (5th Cir. 1996). The *Brady* rule "applies only to impeachment and exculpatory evidence; neutral or inculpatory evidence lies outside its coverage." *United States v. Nixon*, 881 F.2d 1305, 1308 (5th Cir. 1989). The Fifth Circuit has recognized:

> To establish a *Brady v. Maryland* claim, Kutzner must prove that the prosecution suppressed favorable, material evidence that was not discoverable through due diligence. 373 U.S. at 87, 83 S.Ct. 1194; *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir.1997). *Brady* does not obligate the State to furnish a defendant with exculpatory evidence that is fully available to the defendant through the exercise of reasonable diligence. *Rector*, 120 F.3d at 558. When evidence is equally available to both the defense and the prosecution, the defendant must bear the responsibility of failing to conduct a diligent investigation. *Herrera v. Collins*, 954 F.2d 1029, 1032 (5th Cir.1992), *aff'd*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). In this sense, *Brady* applies only to "the discovery, after trial[,] of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

*Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002).

Whitaker cannot establish a *Brady* violation in this case. First, this document was available to Whitaker through the exercise of due diligence. Whitaker was listed as the "guarantor" and his address was listed on the bill. (ECF No. 1, 248). Additionally, Whitaker's hospital bill does not indicate whether morphine medication was administered prior to

Whitaker's statements to law enforcement. (ECF No. 1, 248). Therefore, the hospital bill is not material; it was demonstrated at the suppression hearing that Whitaker received morphine. Whitaker was not able to demonstrate that he received the medication at a time or in an amount that would have rendered his statement involuntary. The Court determines that the existence of this bill would not undermine confidence in the jury's verdict, and federal habeas relief is not warranted as to this claim.

## V. The prosecution failed to disclose its plea agreement with Danny Whitaker and failed to correct his false testimony.

Whitaker complains that the prosecution did not disclose to the jury the plea agreement offered to his brother, Danny Whitaker. He also alleges that Danny provided false testimony at Petitioner's trial. In support of this claim, he attached to his petition several letters purportedly sent by Danny while the brothers were incarcerated. (ECF No. 1, 250-59).

At Whitaker's trial, Danny testified that he was serving a fifteen-year sentence as an habitual offender on a separate robbery charge. (SCR vol. 4, 213-14). He testified that he had pleaded guilty to the burglary and larceny that were the subject of Whitaker's trial and received a twenty-five year sentence. (*Id*. at 214). He also stated that he had pleaded guilty to the aggravated assault of the victim in Whitaker's case and received a twenty-year sentence of imprisonment, some of which was suspended, to run consecutively with the fifteen-year habitual sentence. (*Id*. at 214-15). Danny also testified that, as part of his plea agreement, he had agreed to testify against "other people connected to the case." (*Id*. at 215). Therefore, the jury was aware of the fact that Danny had pleaded guilty to the crimes for which Whitaker was on trial, and that he had received a plea offer in exchange for a promise to testify.

Danny testified that he, Sherry White, and Darlene Bush (the victim's granddaughter) had been to the victim's house earlier that day to try to get some money, but they were unsuccessful. (*Id.* at 218). Later that day, the three were at the home of Danny and Whitaker's mother when Whitaker came over. (*Id.* at 219). Danny testified that he, Sherry, and Darlene were discussing going to get some money to buy drugs. (*Id.*). Whitaker drove Danny to Sam Patterson's house, where the pair picked up Sam. (*Id.* at 220-21). Danny stated that he, Whitaker, and Sam then went to the detail shop where Sam worked so that Sam could retrieve a pipe and a tire tool. (*Id.* at 222). According to Danny, Whitaker then dropped Danny and Sam off at the victim's home, where Danny and Sam proceeded to rob and assault the victim. (*Id.* at 223-24). Danny testified that Whitaker "did know we was going [to the victim's home] to get money," that Whitaker knew what was going to happen, and that, as Danny recalled, Whitaker knew when he picked Danny and Sam up that they had broken in and stolen things. (*Id.* at 228). On redirect examination, Danny testified that he had never been asked to say anything but the truth. (*Id.* at 240). Danny clarified on redirect examination that he "assumed" that Whitaker knew what was going to happen when he dropped Danny and Sam at the victim's house. (*Id.*).

In one of the post-trial letters from Danny that is attached to the instant petition, Danny states, "I didn't want to get up there and testify but you told me as long as I told the truth it would be ok, which what I said did not hurt you anyway." (ECF No. 1, 253). Danny then states that the prosecutor "got mad at me because I would never say you knew what we where [*sic*] going to do." (*Id.*). This evidence does not indicate Danny testified falsely at trial; these letters acknowledge that Danny did not explicitly state that Whitaker knew in advance that a crime would occur. There is nothing in these letters to demonstrate that Danny's trial testimony was

20

untruthful and that the prosecutor knew it to be untruthful. Whitaker's arguments are conclusory, and "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Schlang v. Heard*, 691 F.2d 796, 798 (5th Cir. 1982) (collecting cases). Federal habeas relief is not warranted as to this claim.

## VI. The trial court erred in failing to submit any of the jury instructions submitted by the defense.

Whitaker complains that all of his jury instructions were refused. Generally, challenges to jury instructions may not form a basis for federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Unless petitioner establishes that "the erroneous instruction by itself so infected the entire trial that the resulting conviction violates due process," habeas corpus relief is not available. *Mayabb v. Johnson*, 168 F.3d 863 (5th Cir. 1999); *see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (noting that the burden of demonstrating errors in jury instructions sufficiently prejudicial to attack the validity of the judgment on collateral attack is greater than the showing required to establish plain error on direct appeal). The same is true for failure to give an instruction. *See, e.g., Galvin v. Cockrell*, 293 F.3d 760, 765 (5th Cir. 2002) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

At Whitaker's trial, the State objected to proposed instruction D-1 on the basis that Instruction P-3, which had been granted without objection from the defense, was the proper aiding and abetting instruction under the law. (SCR vol. 5, 312 and 316). The defense offered no argument to the contrary. The trial judge agreed and refused Instruction D-1. (*Id.* at 316). The State objected to tendered instruction D-2 as an inappropriate attempt to define reasonable doubt. (*Id.* at 317). The defense offered no argument to the contrary, and the trial judge refused

21

proffered instruction D-2. (*Id.*). The State objected to proposed instruction D-3 because instruction P-8, which had been granted without objection, covered the issue. (*Id.* at 313). The defense offered no further argument, and the trial judge noted, "I think that P-8 states appropriately the required instruction where a co-indictee or accomplice testifies. For that reason D-3 will be refused." (*Id.* at 317). The defense ultimately withdrew proposed instruction D-4 in light of the fact that Whitaker did not testify. (*Id.*). The State objected to tendered instruction D-5 because "[a]ccessory after the fact is not a lesser included offense of a charge, and therefore, it's inappropriate for this jury instruction to grant it." (*Id.* at 318). The defense argued to the contrary, but the trial judge refused the instruction. (*Id.* at 320). However, the trial judge noted that the refusal of the instruction would not preclude defense counsel from arguing that Whitaker was not "an accessory before or after" the crime, though the State had "framed" the case in such a manner as to require the jury to find that "he was aware, participated, knew, took part in and is guilty as a principal or not at all." (*Id.* at 320-21).

The State objected to proposed instruction D-6 as an incorrect statement of the law, noting that there was more evidence before the jury "than the evidence of William Daniel Whitaker and Sam Patterson that the jury can take into consideration[.]" (*Id.* at 321). The trial judge refused the instruction. The defense noted that Instruction D-6 came from the Model Jury Instructions, but the trial judge refused the instruction. (*Id.*).

The refusal of each of Whitaker's proposed instructions was discussed on the record, and the trial court had a reason to reject each proposed instruction. Moreover, Whitaker cannot demonstrate that the trial court's failure to give his proposed instructions by itself so infected the entire trial that the resulting conviction violates due process. *Galvin*, 293 F.3d at 765. Federal

22

habeas relief is not warranted as to this claim.

## VII. The trial court erred in denying Whitaker's motion for J.N.O.V., or in the alternative a new trial, because the verdicts were against the overwhelming weight of the evidence.

Considering this issue, the Mississippi Court of Appeals held:

"In reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, this Court will disturb a verdict only 'when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.' " *Smith v. State*, 925 So.2d 825, 832 (¶ 16) (Miss.2006). The evidence is viewed in the light most favorable to the verdict. *Withers v. State*, 907 So.2d 342, 352 (¶ 31) (Miss.2005).

Whitaker contends that he was not aware of Danny and Patterson's plan to assault Clark and steal money from him. But we find that, viewing the evidence in the light most favorable to the verdict and taking the supporting credible evidence as true, the evidence presented at trial supports that Whitaker knew the crimes he was committing and that he had the requisite knowledge and participation to support a guilty verdict.

Whitaker drove Danny to Patterson's home, where Danny asked Patterson to go with them to get money for drugs from Clark. Whitaker then drove Danny and Patterson to Patterson's workplace to pick up a crowbar. Whitaker drove Danny and Patterson to Clark's house where Danny and Patterson used the crowbar to pry open Clark's door and assault Clark. Even if we were to assume, as Whitaker claims, that Whitaker did not hear Danny explain his robbery plan to Patterson, it is reasonable to infer that Whitaker knew what was happening when the three stopped to get the crowbar used in the assault and that Whitaker dropped Danny and Patterson at Clark's trailer only to return to pick them up twenty minutes later. Further, Whitaker's confession establishes his active involvement in the crimes. Accordingly, this issue has no merit.

*Whitaker*, 114 So. 3d at 732-33.

A claim challenging the weight of the evidence requires an assessment of the credibility of the evidence presented at trial. *Tibbs v. Florida*, 457 U.S. 31, 37-38 (1982). The jury, not a reviewing court, bears "the responsibility. . . fairly to resolve conflicts in the testimony, to weigh

23

the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 45 n.21

(citation omitted). Therefore, the weight of the evidence is not an issue assessed on federal

habeas review. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas

court has no power to grant habeas corpus relief because it finds that the state conviction is

against the 'weight' of the evidence[.]"). Accordingly, Whitaker is not entitled to habeas relief

based on his challenge to the weight of the evidence.

The Court otherwise notes that a challenge to the sufficiency of the evidence may, in

contrast, form a basis for federal habeas relief only when the evidence, viewed in the light most

favorable to the State, is such that no reasonable trier of fact could have found the essential

elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)

(quotations omitted). Whitaker's defense at trial was that he had no idea Danny and Sam were

going to rob the victim and assault him, and equivocal testimony was elicited by Danny on the

subject. Other testimony established that Whitaker knew before the crime that Danny intended to

take the money if the victim would not loan it, that Whitaker knew that Sam had a tire tool at the

time he exited Whitaker's vehicle, and that Whitaker knew Sam pried open the door to the

victim's house. The jury in this case had the "broad discretion to 'resolve conflicts in testimony,

to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Green

v. Johnson*, 160 F.3d 1029, 1047 (5th Cir. 1998) (citing *Jackson*, 443 U.S. at 319). Whitaker's

jury resolved conflicts against him, and a rational trier of fact could have concluded that

Whitaker was guilty. Accordingly, this claim does not warrant federal habeas relief.

### Certificate of Appealability

Whitaker must obtain a certificate of appealability ("COA") before appealing this Court's

decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA on any claim rejected on its merits, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Applying these standards, the Court concludes that a COA should be denied in this case.

**Conclusion**

The rejection of Whitaker's claims by the State court was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. The decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Whitaker's petition for a writ of habeas corpus is **DENIED**, and that this action is **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED** for the reasons stated herein. A final judgment in accordance with this opinion and order will issue today.

**SO ORDERED, THIS** the _15_ day of September, 2014.

SENIOR U.S. DISTRICT JUDGE